Good morning, Your Honors. Tim Warner for Mr. Vanga, the appellant in this case. I think if there is one theme in my briefings and today, it is communication. And I think Mr. Vanga, I think it is clear from the record that he is articulate, he is intelligent. I can't count on my fingers the number of times he said, I want to represent myself. He said things like, I want to represent myself, period. That was on May 29. There is no support for this idea that he is being manipulative, that he was seeking delay. He said that he was not seeking delay and wanted to get things moving as fast as he could. So there are about three critical times when he goes through this scenario of requesting or saying that he wants to represent himself. Is it your position that at each one of those times he made an unequivocal, clear statement that he wanted to represent himself, that he wanted to proceed? Is that your argument today? It is. It is, Your Honor. And I think each time he — each proceeding was slightly different, okay, was slightly different. But I think it boils down to is it was clear and ambiguous. I think — Are we reviewing this for clear error? I thought that Mendoza-Sanchez said that this finding that a request for counsel was — I mean, a request to proceed, per se, was unequivocal, is something we look at for clear error. So we have a very high standard here, right? I'm not sure about that. And I could maybe check my notes and address that on rebuttal. But you're saying that you're willing to defer more to the court's conclusions? So the district court is there. He's seeing the body language. He's listening to the whole thing. And he makes a finding that the request to proceed, per se, was equivocal. And I'm asking about our standard of review, which I understand is clear for clear error. I think that it's laid out there what was said. So I think that the court — the judge's findings — the judge said that he was making his findings because it was, in his view, conditional. And I think that's really what this boils down to. A lot of our discussion is this issue of conditional. Was this — if it is conditional — was it conditional? If it is conditional, does that somehow make it ambiguous and unclear so that the court can just deny it? And I think that's what it boils down to. So I'm not so sure — Well, if you take the first request — Yes. I think that's the one where he said he wanted full access to a full — essentially a Federal library or Federal — He wanted a nice library. Right. And I — But he refers to advisory council, investigator, you know, all the other things he wants in order to ensure that he can represent himself effectively, as he says. Right. Now, is it your position that that's not equivocal? That it's just a clear — Yes. My position is that it is not equivocal, that he was very clear about what he wanted. He wanted to represent himself, and he wanted to have — make sure he would express legitimate concerns about, boy, I need to have some library access to do this. And I think the problem is that the court said, uh-uh, this is conditional, and just shut it down. He didn't just say some library access, right? Federal library. He said he wanted Federal. He wanted to have access to a computer. He wanted to have advisory council. So he was fairly extensive and not necessarily precise. I mean, we see the claims on the other side also, where if the court had granted his request, his motion to proceed pro se, and then he says, well, I didn't get everything. It was erroneous because — and I was denied effective assistance of counsel because I didn't get everything I asked for in order to have effective assistance. And we have cases specifically saying you can't be whipsawed that way. I just do not see a basis to say that the court was being whipsawed. He wanted — he wanted some special access. He was concerned. He was a very articulate, intelligent gentleman. He was concerned, hey, I'm in custody. I need to have access to these materials if I'm going to do it. I think that it should have been handled differently. I think the court should have done that. But it didn't. It did not. No. Instead it — And when it didn't, he decided to stay with counsel. Okay. That was the first proceeding. Then there was a second one. And then there was a third one where the judge brought the parties there, and he said — That was after the plea. Right. No. There was one on May 22nd, right before, a week before the plea, where he said I'll stay with counsel. Okay. And then we get to the one at sentencing, which I think is a significant one, which I think is akin, similar to the court's decision in the Farias case. He — all he wanted was, as he says, to present his jurisdictional claim. And — Did he effectively do that at the in-camera conference? He did sort of outline that claim. The court didn't rule on it. I know he wanted to present some briefing. But the court didn't rule on it. The court said something like, no attorney's going to bring that claim. The court did say that. Yeah. His court. I remember that. The court did say that. But the court didn't rule on it. And the court at the sentencing proceeding was adamant that it hadn't been heard. You know, if we look at the court's words, the court's view, it wasn't going to allow him to present it. So I think the — you know, even if the — But he didn't say, I want to represent myself. He liked — he said that Ms. Santos was fine except that she wouldn't bring the jurisdictional motion. And it's hard to see why that would be an unequivocal request to represent yourself for all purposes. I think it — I think it was unequivocal. Just because you're saying you want to represent yourself and you're going to need some time to present this motion — Not if Ms. Santos will present the motion. I'm sorry. Not if Ms. Santos will present the motion for me. Isn't that what he said? He would have been happy if Ms. Santos would have presented the motion for him. And then he would have stayed with her. Yeah. And — but she would not present — Basically, what he was saying is, if Ms. Santos presents the motion, I don't want to represent myself. I think he would have been happy if Ms. Santos presented the motion. And that was his reason — That's what he said in the in-camera conversation. Yeah. And that was his reason for wanting to represent himself, is that he felt serious about this jurisdictional motion. And that's why at the sentencing proceeding, remember, he actually thought that Ms. Santos was going to file that. And he says that her investigator came on the Wednesday before the sentencing and returned it. And that's why he shows up there. And he was unable — he thought it was going to be presented. It wasn't. And he would not have needed much of a continuance — a week's continuance. It wasn't a continued excessively. I don't think there's any basis to say he was seeking delay or he was being manipulative. There's no basis. There's no express finding by the court. I don't think there's a finding by the court of being whipsawed or being manipulative. Did you want to save some time for rebuttal? I do. Okay. Thank you. You've got a minute and 42 seconds. All right. Thanks. Good morning. I'm Samuel Wong. I'm an assistant United States attorney from Sacramento. May it please the court. Judge Ikuda, you are correct. The standard of review for the district versus Mendez versus Sanchez case that's cited in the government's brief. What I want to do is to explain to the court, using the court's own cases, what it means to be equivocal. Equivocal means — excuse me, unequivocal means just that, unequivocal. There's a case that the Ninth Circuit handed down. It's in Adams versus Carroll, 875 Fed Second, 1441. At 1444, it's a Ninth Circuit case from 1989. And in that case, this Court said that an equivocating defendant is presumed to have requested the assistance of counsel. And then when you combine that case with this Court's ruling in Meeks versus Craven, which is found at 482 F Second, 465, and the jump site is 467, Ninth Circuit, 1973, in that case what happened was a — it was a habeas case. And the defendant in that case wanted to make a motion very similar to the defendant here. And the district court there denied the motion. The district court then inquired, you still want to represent yourself? And the defendant used these words, yes, your honor, I think I will. This court ruled that the words I really met the constitutional criteria for waiver of counsel, and that the I think I will was equivocal. And when you look at the facts in this case, starting from the first time that Mr. Vanga asked for self-representation, he did say that he wanted to represent himself, period. But that was before the advisement of the Feretta Warnings. The law requires that the district court give the Feretta Warnings first. The Feretta Warnings are three prongs. One, the nature of the charges. Number two, the penalties involved. And number three, the dangers and hazards of self-representation. So as soon as Mr. Vanga brought up the subject of self-representation, the district court was duty-bound to give the Feretta Warnings, which it did. And the court then inquired of Mr. Vanga, do you want to represent yourself? And Mr. Vanga's response was he wanted to talk to his attorney. The court then went in, allowed Mr. Vanga to consult with his attorney, and then asked Mr. Vanga again, do you want to represent yourself? And at that time, Mr. Vanga started asking questions about whether he would be able to have access to the Title 18 library. He never stated what books were not available at the Sacramento County Law Library, and he should have known. He had been housed in that county jail for approximately five to six months before that. So if he wanted to represent himself, he could have and should have gone to the jail to see what was available. He never told the court that the library was insufficient in any way. And what Mr. Vanga said in response to the court's second request, did you want to represent yourself, Mr. Vanga again gave an equivocating response. He basically said that he would only do that if he could effectively represent himself. The court then went into a third round of discussing with Mr. Vanga what were his concerns. The court was trying to ferret out what concerns Mr. Vanga had. The court offered to Mr. Vanga, an investigator, to resources at the jail law library. And the third time that the district court asked Mr. Vanga, do you want to represent yourself, he said, I'm sorry, I'm confused. At that stage, with the defendant who was confused, it would be improper, I would submit to the court, for the court to press Mr. Vanga further for a response. Where you have the defendant says that he's confused, the court shouldn't force Mr. Vanga to make a choice. Instead, the court adjourned at that time. A week later, excuse me, less than two weeks later, Mr. Vanga came to court, happy as could be. He said that he was satisfied with his counsel, Ms. Dina Santos, and with the assistance of Ms. Santos, he pled guilty without the benefit of a plea agreement. That was on April 17th, 2015. And on May 11th, Ms. Santos filed a two-sentence motion to allow Mr. Vanga to represent himself. That motion was heard on May 15th, 2015. And the court asked Mr. Vanga, do you want to represent yourself? And Mr. Vanga was equivocal again. He tied his desire to represent himself to access to a law library and access to a computer so that he could be effective in his representation. Well, the law does not give him those choices. If he wants effective representation, the Sixth Amendment says the court and the taxpayer will give him appointed counsel. But if a defendant wants to represent himself, there is no way that any court can guarantee that a defendant can be effective in representing himself. And that's why the courts imposed the requirement that a defendant make an unequivocal choice. Do you want to represent yourself? Then say so. It's not that hard. All Mr. Vanga had to say was, I want to represent myself after receiving the Faretto Warnings from the District Court. But for whatever reason, Mr. Vanga would not and he could not state those words and leave it with a simple response, I want to represent myself. Each time that Mr. Vanga was asked that question, he tied it, his desire to represent himself, with something else. Legal access to a better law library, computers, and on May 29th, the filing of a motion challenging the subject matter jurisdiction of the court. Keep in mind that Mr. Vanga had prepared that motion and had mentioned that motion on May 15th, 2015. That was two weeks before Mr. Vanga went to sentencing on May 29th. If he really, really wanted to file that motion, he could have filed that motion, he could have demanded self-representation. However, he did not do that. Keep in mind on May 22nd, he said he was happy keeping Deena Santos as his counsel. He reiterated several times that he wanted to keep Ms. Santos as his counsel, and when Ms. Santos heard that Vanga wanted to keep her as his counsel, she said that she would stay on board and that she would do the best that she could for Mr. Vanga. Except a week later, at the sentencing hearing, what bring anybody, make anyone aware of his desire on the day of sentencing, he tells Ms. Santos that he wants to represent himself. He tells the court that too. And the court then inquires, well, are you ready to represent yourself without a continuance? And Mr. Vanga says he wants a continuance, he wants to file the subject matter jurisdiction motion. That is untimely. If he wanted to represent himself, he should have conducted himself just the way that all lawyers have to conduct themselves according to the procedural rules and the substantive rules of court. He should have filed this motion earlier. It could have been decided. And in this case, the district court kept asking, kept probing of Mr. Vanga, do you want to represent yourself without a continuance? And Mr. Vanga kept vacillating. That's the whole history of Mr. Vanga's conduct in this case. He kept vacillating between representing himself or, but it's always tied to some condition that he wanted. And that is not what the courts allow. An unequivocal request means just that. And it was simple for Mr. Vanga to make. He could have just said, I want to represent myself, period. But he never did that.  Thank you. Just a couple points. There is this question about, I want to effectively represent myself. And I think that, I think we're misconstruing this when we say, oh, that's what he's saying is effective representation, like right to effective counsel. You know, this court has said that the pro se defendant does have a meaningful, it has to be meaningful. And I think we're reading too much into it if we're drawing a parallel to effective counsel. He's just saying, look it, I think that to represent myself, to be effective or make this meaningful, I'm going to need, his concern is he needs a law library. So I wouldn't put that spin on it. I think it's more concern about meaningful representation. Another thing that was brought up is, look it, he gets to the time of sentencing and it was too late. He should have filed his motions earlier. Well, he couldn't, okay, because he had an attorney that wouldn't file them. And he had already been denied the ability to represent himself, so he couldn't file them. And what he says in there, as I said, Wednesday before sentencing, his attorney returned those motions to him. So to put too much on him and say, well, you should have filed it earlier, he just couldn't. All right? Thank you, Your Honors. Okay, thank you. We appreciate your arguments this morning. The matter is submitted.
judges: Paez, Ikuta, Vitaliano